May it please the court, I'm Aubrey Fletcher appearing on behalf of petitioner Ms. Odesanya. Can the court hear me? You need to speak a little louder. I'm going to stand closer to this microphone. I have a question for you. Yes. Let's assume for purposes of my question that there's past persecution so the burden of proof shifts. And let's assume that the danger from the mother-in-law, if it's a well-founded fear that can't be escaped by relocating, is sufficient. I understand that she says if I go to the north I avoid my mother-in-law, but they persecute Christians. If I go to the south, they don't persecute Christians, but my mother-in-law is there and the family is going to beat up and kill me or impose this horrible mutilation on me. Here's my question about relocation. The country is about the size of two Californias side by side. It's not like going to the northern part of town or the southern part of town. Why can't she go south to avoid the persecution of the Christians by the Muslims in the north and just live in a different town from her mother-in-law and the other sons? Well, there is record evidence about persecution of Christians in the southeast. I can't hear you. Oh, I'm sorry. Can the court hear me now? You've got to talk louder, not just make the mic closer. Okay. There is record evidence about persecution of Christians in the southeast. Also, she can't escape her in-laws in the south. Why? It's a country the size of two Californias. If you had a monstrous mother-in-law in San Diego, you couldn't live in Humboldt County? The record shows that in 2003 her brother-in-law hired agents who went to her friend's house looking for her. Also, because Ms. Odesanya was found to be credible, her testimony is regarded as true, and she testified credibly that her in-laws could find her anywhere in the country and that the reason they didn't find her in Wari was because she didn't stay there long enough for them to find her there. So her testimony shows that they could find her. Also, it would be unreasonable for her to have to relocate within Nigeria. If they go to that kind of length, couldn't they find her here? Well, they do know that she's here, and her mother-in-law did contact her here and sent her a very chilling death threat letter. So the fact that they can find her doesn't distinguish the U.S. from her home country? Not in terms of finding her, but in terms of affecting any harm. Why is that? Why are they more able to beat up or kill or mutilate her here than here? Well, because they are there. It's easier to travel within Nigeria than to travel from Nigeria to the United States. It's cheaper, it's logistically easier for a host of reasons. And when she left her home because her mother-in-law drove her out, she went and stayed with a friend for a few months, and her mother-in-law still found her at one of her jobs, and she got fired from that job and didn't tell her mother-in-law the location of her new employment, yet her mother-in-law found her there and harassed her in front of that job and caused her to lose that as well. And she wasn't sure how the mother-in-law found her at the second job, but she did. So the in-laws are clearly looking, and the mother-in-laws clearly marshaled other in-laws and compatriots. They've hired agents to track Ms. Odesanya down. Also, it would be unreasonable for her to have to relocate anywhere within Nigeria. There's all kinds of evidence in the record about civil strife in every region, whether inter-religious or inter-ethnic or based on oil money, and discrimination and persecution against women throughout Nigeria. So that goes to the reasonableness as well as the safety of the possibility of her relocating. That would mean that everybody in Nigeria is entitled to asylum in the U.S. I mean, it's just a general condition. Well, as far as relocation, the standard's different than the standard for asylum. The government would have to show she could reasonably relocate, which is a different standard from well-founded fear. But once it's established that there is a well-founded fear, relocation, you look at both safety and then at the reasonability of relocation. So somebody who's in a similar situation but has a less resourceful set of relatives might not be entitled to asylum if they could move and not be followed. Potentially, Your Honor. I think the facts in this case are quite specific. I mean, I think given her religion, which puts her in danger in the north, and judging from the record, also in the middle of the country in the southeast, and then on top of that she is a woman, and her in-laws are in the sort of south-southwest of the country, there's nowhere she could safely or reasonably relocate. Are all Christian women in Nigeria entitled to asylum in the U.S.? I would say probably not, Your Honor. What would be the distinction? Well, the distinction here is the female genital mutilation situation. She's at special harm, very individualized, and... So all intermarried Christian women. Well, no, not exactly. Well, I guess her mother-in-law is pagan. Correct. But Christian women... But, I mean, a lot of Nigeria's Christian majority are almost entirely Christian. Some regions in the south, yes, Your Honor. Well, would all people who have experienced violence as a result from their families be entitled to asylum here? No, I would say not. There's also the nexus requirement in a family violence situation and a state control or state protection issue. What is the case or cases you think is the strongest in support of your position? As to relocation? As to merits. In general? Yes. Well, I would say Kasinga and Mohamed. And as to relocation, well, I think the facts are very strong as to relocation. And I also wanted to point out to the Court that the immigration judge did make a past persecution finding on the Christianity claim. I believe that's in the record at page 88. And that seemed to get glossed over, though not disturbed, by the BIA. So there is a past persecution finding in this case. And then the Board found that the presumption of a well-founded fear, which then kicked in, was rebutted because Ms. Odesanya could relocate within Nigeria. And as we've just discussed, though she could leave the northern, predominantly Muslim parts of the country, she's in danger in the south. So I would like to reserve the balance of my time. You may do so. Thank you. We will hear next from the government. Good morning, Your Honors. Laura Haley DeHicken for Attorney General Eric Holder. Your Honors, the petitioner is a 36-year-old woman and attorney. She's married to a doctor who was also a Christian and who supported her refusal to undergo FGM. Moreover, the unrebutted record evidence in this case is not only that she can internally relocate, but that she did internally relocate safely. Well, the question is reasonableness and safety, right? Or two questions, I guess, on relocation. But if you put together cases like Mohamed that clearly hold that female genital mutilation is a form of persecution that could warrant asylum, with Farouk, which says that if your relatives are the ones who persecute you, but the government won't do anything about it, that also counts. Putting those things together seems to establish the case. What's different? If you put together the Mohamed line of cases and Farouk, what's left? Petitioners claim, as the board found, fails for several reasons. The first is that the harm did not rise to the level of persecution. Petitioner has not experienced FGM in this case. No, but she did. That makes her case better instead of worse. It can still be done to her. And no one has ever attempted to forcibly circumcise her. Well, that depends on how you understand what happened to her. There's no evidence that anyone ever attempted to forcibly circumcise her here. I thought what happened here was her mother-in-law thinks she should get circumcised. She and her husband don't think she should be circumcised. The police rescued her the first time in the north from the mother-in-law and the rest of the family. The mother-in-law was in the south. Not the second time. Sorry. So why isn't it plausible that if her mother-in-law and the rest of the family, other than her husband, get hold of her, they'll beat her up and forcibly circumcise her? There's no evidence that they ever did attempt to forcibly circumcise her. There was harassment. There was insult. There was obviously personal hostility by the mother-in-law against Petitioner. Well, it went a little bit beyond that. I mean, she was physically harmed. And the police, at least the second time, basically said your mother-in-law is right. You're causing the problem yourself by not being willing to undergo mutilation. Petitioner has not experienced past persecution, and the record evidence does not compel a finding. She'd experienced no lasting injuries. And with regard to whether the harm is cognizable as persecution, the burden is on Petitioner to establish that the government is unable and unwilling to control. Here, a third party called the local police to ongoing domestic disputes where the police were not particularly helpful. But Petitioner is an attorney. She works in areas of domestic violence. She never went to the police herself. She never filed a formal complaint. She never sought protection. What's the relevance of her being a lawyer? So a lawyer can't fear persecution? No, the relevance is that she never materially made the government aware of her claim. And she was in a position to do so. I don't get it. The BIA decision says assuming that the respondent has shown past persecution, the burden shifts. They seem to proceed on that assumption. Okay. So I don't understand why you want us to reexamine it. With regard to the finding of past persecution, that pertained to Petitioner's Christianity religion claim. And the board assumed past persecution without deciding that claim Well, the IJ did find past persecution. Wait, let me finish. And the BIA cited Banner of Burbano, which in our jurisprudence means that what the IJ said is carried forward. That is, it's incorporated. So there is a finding of past persecution, at least on the basis of religion. Under Banner of Burbano, the board agrees with the result. Not necessarily every decision the immigration judge made to reach the result. But the board assumed a finding of past persecution. So that's not the issue. With regard to Christianity, her Christianity claim, they assumed that finding. And then the board found that the unrebutted record evidence here is that she has Look, I don't think you've got a problem on the Christian part, because the BIA says, and they've got a good record to support it, that she can just move to a Christian region of Nigeria. She did move to a Christian region of Nigeria, and no persecution of her on account of being a Christian there. The real issue is the female genital mutilation imposed by her mother-in-law with the assistance of the family. Here, the record evidence is that Petitioner was able to relocate away from her in-laws after Petitioner left Lagos in 1999. What about the problem that they can find her and catch her and forcibly do it there? That's simply speculation. After Petitioner left Lagos in 1999, she remained in Nigeria for a year and four months thereafter and was never contacted by her in-laws. She lived in Wari for six months. She moved to Kaduna and lived there for another six months. Petitioner did not flee persecution based on her in-laws. She lived for a year and four months in Nigeria unharmed. And then she ultimately left the country after the first anti-Christian riot because her and her husband had already planned a vacation. Didn't BIA refuse to even consider that evidence of the family pressure and the like in their decision? No. The board specifically on page 4 considered whether Petitioner was vulnerable to unable to internally relocate due to the combined harms that she addressed regarding her in-laws and the religion claim. And the board found, and the record evidence supports, that any harm that Petitioner experienced with her in-laws was localized. There's no evidence that her in-laws attempted to seek her out or harm her while she remained in Nigeria for a year and four months thereafter. Let me ask you something about that reference you made to page 4. The BIA says, we also note that respondents' argument that the fear of FGM and of Christianity combined that we were vulnerable throughout Nigeria. The record fails to support this claim for a variety of reasons, including her husband's lack of support for FGM, the limited power of her mother-in-law to impose her will, and the existence of large areas in Nigeria where Islamic law is not imposed. Now, that's a critical sentence by the BIA. Yes. The last part, large areas of Nigeria where Islamic law is not imposed, is well supported by the record. But, as I understand it, this female genital mutilation is largely, but not exclusively, an Islamic practice. For example, her mother-in-law is pagan rather than Muslim. A lot of Africans believe in female circumcision, whether they're Muslim or not. The Christians generally don't do it. The husband, the husband's lack of support for it is well supported, but it looks like at least twice, despite the husband's feelings, his mother-in-law has been able to mobilize the husband's brothers to forcibly take control of his wife, even against his will. Yes, Your Honor, but that only occurred in Lagos. And what's important here, and what the board pointed out, is that the mother-in-law's reach is limited. She has a limited ability to impose her will. Why is it limited? Because Petitioner was able to live in Nigeria for a year and four months without being contacted by her in-laws. There's no evidence. And here it's important to keep in mind the standard of review. Substantial evidence supports the board decision, and no record evidence compels a finding that Petitioner's mother-in-law would be able, willing, able, or have the means to find her elsewhere in Nigeria. Well, she's certainly willing. I think the record compels finding that she's willing and eager, but the rest of it I think there may be room to argue. But she certainly has the motivation. She's been obsessed with it. In Lagos. She was obsessed in Lagos. Isn't Lagos largely Christian, at least to the point that the Muslims can't successfully attack the Christians there? Yes, it's in the south. It's predominantly Christian. The south is predominantly Christian. Forty percent of Nigeria is predominantly Christian. It's predominantly located in the south. Which goes against your statement that if she's in a largely Christian area, she faces no problem. Excuse me, Your Honor. I did not intend to make that statement. With regard to the Christianity, that shows that she doesn't fear religion. The only person or people that she fears are her in-laws. There's no argument here. Petitioner's family, parents were against FGM. She was not circumcised. She has not experienced cultural pressure with regards to that. She's lived in Nigeria her life and didn't experience any problems until her mother-in-law in 1998. And then Petitioner was able to avoid any of these harms by relocating. And where an alien is able to relocate safely in their home country, they cannot make out a claim for asylum. And here, Petitioner was able to remain in Nigeria for a year and four months without any contact from her in-laws. She can relocate to Wari. Thank you. You've exceeded your time. I have a sentence to summarize, if you wish. Yes, Your Honor. Your substantial record evidence supports the Board's decision that Petitioner would be able to safely relocate and the Court should deny the petition. Thank you, Your Honors. Thank you. I believe you have a little bit of rebuttal remaining. Thank you, Your Honors. I'd like to point out that under this Court's decision in Joseph last year, where there's a burbono affirmance and the Board goes on to comment on the facts and law in the case, that this Court looks at both the Board decision and the IJ decision. So the IJ's finding about past persecution on account of Christianity stands. In this case, it's undisturbed by the Board. So the government contends that Ms. Odesanya was able to relocate safely within Nigeria, which is not on the record. Presumably when the Court, when the Board, I'm sorry. What do you mean not on the record? I thought she did live in two places where there was no hassle. Her mother-in-law could find out where she was but didn't do anything, which suggests some strength to the inference that she couldn't do anything. She suffered other harm in those places. She went to Wari and had to leave very quickly. She only really lived there for a month before starting to plant roots in Kaduna. And in Wari, she testified that there was civil strife to the point, the oil delta, where there's a lot of fighting. But that's not personal persecution on account of one of the five factors. That's just it's a lousy place to live because people want to get the money. Right, and because of the violence. But so Ms. Odesanya was persecuted because of the FGM, and then the burden shifts to the government to show that she couldn't. The government could rebut the presumption by showing that she could relocate safely and reasonably. And it's unreasonable to expect her to relocate in a place like Wari where people are getting killed on the streets every day, which is what Ms. Odesanya testified to. And from Wari, she very quickly went to Kaduna where the very horrific. Wait a minute. Does unreasonableness, is there a case that says unreasonableness goes that far? I mean, I live in Alaska and people in Anchorage think it's unreasonable to have to live in my town, Fairbanks, because it's cold. There are factors. Is there some case that says unreasonableness goes to living in a place that's not a very nice place to live? Yes, Your Honor. There are factors set forth in, I think it's Melkonian, I want to say, that involve economic considerations, general civil strife, discrimination. How do you spell that one? I believe it's M-E-L-K-O-N-I-A-N. Thanks. And I may have that case wrong, but there is case law that sets forth numerous factors to consider. Does that say that because of the, it sounds like it's an Armenia case. Possibly, Your Honor. I'm not sure. Could be one of the other areas that used to be the Soviet Union. Does it say just because there's a lot of corruption and crime and it's generally not a pleasant place to live compared to California? Yes, Your Honor, and it talks also about the difficulties of relocating because of just how one is perceived when one relocates within one's country. It talks about civil strife and other factors. So it's much more lenient than the well-founded fear type standard. Unless they can find a nice place to live in their home country, they're entitled to asylum if they were previously persecuted in some other part of the country and would have reason to fear persecution in the other part of the country. Well, the case law doesn't say it has to be a nice place to live, but it is a much more lenient standard in terms of the kinds of things that the court and agency looks at in terms of reasonableness. So it's somewhere in between a nice place to live and persecution, I would say. Thank you, counsel. Thank you, Your Honor. The case just argued is submitted, and we appreciate the helpful arguments from both counsel. Our next case on the docket is Aberdeen v. Toyota Motor Sales.
judges: Zilly, Kleinfeld, Graber